UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN LUDOVICI,                          :
                                        :CIVIL ACTION NO. 3:13-CV-2997
            Petitioner,                 :
                                        :(JUDGE CONABOY)
            v.                          :(Magistrate Judge Schwab)
                                        :
MARIROSA LAMAS,                         :
                                        :
            REspondent.                 :
                                        :

---

**MEMORANDUM**

Here the Court considers Magistrate Judge Susan E. Schwab's
Report and Recommendation (Doc. 40) concerning the Petition Under
U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1) filed by
Petitioner John Ludovici ("Petitioner").  Magistrate Judge Schwab
recommends that the Petition be dismissed, concluding that
Petitioner has not shown entitlement to relief on any claim raised.
(Doc. 1 at 15-36.)  Petitioner timely filed objections to the
Report and Recommendation.  (Doc. 43.)  No response to the
objections has been filed and the time for doing so has passed.
Therefore, this matter is ripe for disposition.  For the reasons
discussed below, the Court adopts the Report and Recommendation
(Doc. 40) and dismisses the 28 U.S.C. § 2254 Petition (Doc. 1).

## I. Background

**A.    *Factual Background***

Magistrate Judge Schwab repeated the following background
which she noted was "consistently set out by the state courts."
(Doc. 40 at 2 n.2.)

On the night of April 4, 2003,
[Ludovici] approached three individuals while
they were sitting in a car outside of a
restaurant in Moosic, PA.  He stated that he
was a police officer and requested
identification.  When they questioned him
about his identity, he pulled a gun on the
three victims, chased them in a car as they
attempted to escape from him in their car,
and after their car was boxed in, he pulled a
gun on them again, robbed them[,] and then
stole their car to flee the scene.

Later that evening [Ludovici]
encountered a car containing thee Air Force
Airmen as they were passing through
Lackawanna Cuonty on Route 81. [Ludovici]
forced their vehicle off the roadway with his
stolen vehicle, approached the vehicle of the
Airmen and told them that he was a police
officer.  When they asked to see his badge,
he pulled out a gun and forced them out of
the car and robbed them.

Still operating the stolen vehicle,
[Ludovici] left the scene of the robbery of
the Airmen, and when spotted by the police,
he led them on a lengthy, high-speed chase
through several communities before crashing
in the stolen vehicle and being taken into
custody by the State Police.

While in custody at the State Police
Barracks that same night, [Ludovici] loosened
the shackles that held him and escaped from
the barracks.  He fled across the parking lot
but was again apprehended by the State
Police.[1]

[Ludovici] was charged on April 5, 2003,
with three counts of robbery, three counts of

---

[1]  The Magistrate Judge notes that Ludovici was eventually
taken to the Community Medical Center in Scranton, Pennsylvania, to
be treated for the injuries he sustained in the car crash.  (Doc.
40 at 2 n.3.)  She adds that he made incriminating statements to
Trooper Georgia while at the hospital.  (*Id.*)

receiving stolen property, three counts of recklessly endangering another person, one count of impersonating a public servant, one count of fleeing or attempting to elude police, and one count of escape. The[se] charges arose from the robberies of the three Air Force Airmen.

On April 11, 2003, [Ludovici] was charged with three counts of robbery, three counts of theft by unlawful taking, three counts of recklessly endangering another person, tow counts of simple assault and one count of impersonating a public servant. These charges arose from the robberies [of the] three individuals in Moosic, PA.

[Ludovici's] Ominbus Motions were filed on November 18, 2003. [Ludovici] raised the possibility of an insanity defense and psychological evaluations were undertaken. On October 15, 2004, [the trial court] granted the Commonwealth's Motion to Preclude an Insanity Defense because [Ludovici's] own expert found that he was not legally insane at the time of the crimes.

A jury trial was held from October 18 through October 20, 2004. The charges pending at the time of the trial were three counts of robbery and one count of impersonating a public servant in 03-CR-923; three counts of robbery, one count of impersonating a public servant, one count of recklessly endangering another person and one count of fleeing and attempting to elude police in 03-CR-924; and one count of escape in 03-CR-926. The jury found [Ludovici] guilty of all charges.

(Doc. 40 at 2-3 (quoting Doc. 11-1 at 5-7.) As a result, Petitioner was sentenced to a minimum of 66 years and three months incarceration to a maximum of 135 years incarceration. (*Id.* (citing Doc. 1 at 1 ¶ 3; Doc. 11 at 1 ¶ 3).)

## B.   *Procedural Background*

With this Petition, Petitioner challenges his 2004 conviction in the Court of Common Pleas of Lackawanna County, Pennsylvania, as described above.  (Doc. 1 at 1.)  Petitioner filed a direct appeal to the Pennsylvania Superior Court which affirmed his conviction and sentence on March 23, 2006.  (Doc. 11-1 at 5-33.)  He filed a Petition for Allowance of Appeal with the Pennsylvania Superior Court which was denied without comment on August 29, 2006.  (*Id.* at 35-65, 67.)

Petitioner also sought collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA") in December 2006 which he filed *pro se.*  (Doc. 40 at 4.)  Following this initial PCRA filing, Petitioner filed two amended PCRA petitions *pro se*, the first in December 2007 and the second in December 2008.  (Doc. 40 at 4.)  He filed his final supplemental PCRA petition *via* his fourth appointed attorney, Terrence McDonald, Esq., on October 21, 2009.  (*Id.* (citing Doc. 11-1 at 155-66).)  Following a hearing, the PCRA court denied Petitioner's supplemental PCRA petition on May 18, 2011.  (*Id.* (citing R. 164-84).)

Petitioner appealed the PCRA court's decision to the Pennsylvania Superior Court which affirmed and expressly adopted the reasoning of the PCRA court on March 13, 2012.  (Doc. 40 at 4 (citing 236-38).)  Petitioner then filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court which was denied

without comment on December 27, 2012.  (Doc. 40 at 4 (citing Doc. 11-1 at 236-62).)

As outlined by Magistrate Judge Schwab, the procedural history in this Court is similarly protracted.  (Doc. 40 at 5-6.) Following the issuance of her Report and Recommendation, Petitioner sought an extension of time to file objections which the Court granted.  (Docs. 41, 42.)  He filed objections within the time allowed.  (Docs 42, 43.)  With the time having elapsed for any further filings, the Court will consider the Report and Recommendation and Petitioner's objections to it.

## II. Discussion

**A.** *Legal Standards*

**1.** **Standard of Review**

When a petitioner files objections to a magistrate judge's report and recommendation, the reviewing court conducts a *de novo* review of those portions of the report to which objection is made. 28 U.S.C. § 636(b).  To warrant *de novo* review, the objections must be both timely and specific.  *Goney v. Clark*, 749 F.3d 5, 6-7 (3d Cir. 1984).  The court may accept, reject, or modify--in whole or in part--the findings made by the magistrate judge.  28 U.S.C. § 636(b)(1).  "Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper."  *Kates v. Bledsoe*, Civ. A. No. 3:11-CV-391, 2012 WL 6721069, at *1 (M.D. Pa. Dec. 27, 2012) (citing *United*

5

*States v. Raddatz*, 447 U.S. 667, 675-76 (1980); Goney, 749 F.2d at 7)). Uncontested portions of the report are reviewed for clear error. *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**2. 28 U.S.C. § 2254**

As noted by the Third Circuit Court of Appeals, the Supreme Court has often said habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). The reasons for restraint exercised by federal courts in reviewing and granting habeas relief are many, including the considerations of comity and federalism. "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Engle v. Isaac*, 456 U.S. 107, 128 (1982). Also, states have a recognized interest in the finality of convictions that have survived direct review within the state court system. *Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993). As stated in *Martinez v. Ryan*, 566 U.S. 1 (2012), "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and

6

respect necessary to preserve the integrity of legal proceedings within our system of federalism."  *Id.* at 9.

A federal district court first considers rules regarding the state's primary opportunity to address claims of constitutional wrongdoing raised in the habeas petition.  This inquiry involves the legal standards relevant to exhaustion of state court remedies and the doctrine of procedural default.

*a.  Exhaustion and Procedural Default Legal Standards*

Absent special circumstances, the petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the state."  28 U.S.C. § 2254(b).  If an applicant has the right to raise the questions presented under any available state procedure, he shall not be deemed to have exhausted the remedies available.  28 U.S.C. § 2254(c).

To exhaust state court remedies, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review procedures."[2]  *O'Sullivan v. Boerckel*, 526 U.S.

---

[2]  As noted by Magistrate Judge Schwab, "[i]n Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and 'unavailable' for purposes of exhausting state court remedies under § 2254."  (Doc. 40 at 7 n.5.)  Therefore, in Pennsylvania a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction or on appeal from a PCRA court's denial of post-conviction relief. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004).

7

838, 845 (1999). A claim has been exhausted when it has been "fairly presented" to the state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). This means that the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). Our Circuit Court has also described "fairly presented" to mean that a petitioner must have presented both the factual and legal substance of his claims in the state court's highest tribunal. *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012). He must do so "in a manner that puts them on notice that a federal claim is being asserted." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). The allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard*, 404 U.S. at 276-77). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corrections*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). A petitioner meets his obligations to exhaust his claim "by fairly presenting the claim to the state courts, even if the state courts decline to specifically address that claim." *Jones v. Mooney*, No. 1:13-cv-2526, 2015 WL 4950792, at *9 (M.D. Pa. Aug. 19,

2015) (citing *Dye v. Hofbauer*, 546 U.S. 1 (2005) (per curiam); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004)); *see also Collins*, 742 F.3d at 545 n.10 (citing *Smith v. Digmon*, 434 U.S. 332, 333-34 (1978)). Conversely, "a claim may be exhausted 'if the State's highest court expressly addresses the claim, whether or not it was fairly presented.'" *Foote v. Del Papa*, 244 F. App'x 74, 78 (9th Cir. 2007) (not precedential) (quoting *Casey v. Moore*, 386 F.3d 896, 916 n.18 (9th Cir. 2004)); *see also Sandgathe v. Maass*, 314 F.3d 371, 377 (9th Cir. 2002) (citing *Orr v. Orr*, 440 U.S. 268, 274-75 (1978)) ("there is no point asking whether a state court had a full and fair opportunity to resolve federal constitutional claims . . . when the state court in fact did so); *Moore v. DiGuglielmo*, 489 F. App'x 618, 623 (3d Cir. 2012) (not precedential) (citing, *inter alia*, *Walton v. Caspari*, 916 F.2d 1352, 1356 (8th Cir. 1990) ("A habeas [p]etitioner need not actually have raised a claim in a state petition in order to satisfy the exhaustion [requirement], if a state court with the authority to make a final adjudication actually undertook to decide the claim on its merits in petitioner's case.")).

The petitioner bears the burden of proving exhaustion of all available state remedies. *Bronshtein,* 404 F.3d at 725 (citing *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993)).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the

applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (quoting 28 U.S.C. § 2254(b)). Claims deemed exhausted because of a state procedural bar are procedurally defaulted. *See*, *e.g.*, *Lines*, 208 F.3d at 159-60 (*citing McCandless*, 172 F.3d at 260). The district court then analyzes the claims under the procedural default doctrine. *Id.*; *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Our Circuit Court has explained that

> [p]rocedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue, *see Wenger v. Frank*, 266 F.3d 218, 223-24 (3d Cir. 2001); or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state rule, *see McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). Ordinarily, violation of firmly established and regularly followed state rules . . . will be adequate to foreclose review of a federal claim.

*Rolan*, 680 F.3d at 317.

Under the procedural default doctrine, a district court does not reach the merits of a defaulted claim unless the petitioner can show "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the court does not consider the merits. *Coleman*, 501 U.S. at 731. In order to show "cause and prejudice" sufficient to satisfy a state court default, a petitioner must show

10

the "cause" for his default and "prejudice" attributable thereto. *Werts*, 228 F.3d at 192 (citing *Harris v. Reed*, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). By way of example the Court added that "a showing that the factual or legal basis for a claim was not reasonably available to counsel or that some interference by officials made compliance impracticable, would constitute cause for this standard." *Id.* (internal citations and quotations omitted). Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Carrier*, 477 U.S. at 494; *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."[3]

---

[3] "Currently the Supreme Court treats actual innocence as a gateway for consideration of procedurally defaulted claims." *Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 119 (3d Cir. 2015) (not precedential) (citing *McQuiggin v. Perkins*, 569 U.S. 383 (2013); *Schlup*, 513 U.S. at 327-29). *Wright* also stated

*Schlup v. Delo*, 513 U.S. 298, 326 (1995) (quoting *Carrier*, 477 U.S. at 496). It is a stronger showing than that needed to establish prejudice. *Id.* "To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime by presenting new evidence of innocence." *Keller v. Larkins*, 251 F.3d 408, 415-16 (3d Cir. 2001) (citations omitted). In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the Court of Appeals for the Third Circuit explained the two-step inquiry originally set out in *Hubbard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004): first, the "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" *Goldblum*, 510 F.3d at 225 (quoting *Hubbard*, 378 F.3d at 340); second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence,'" *id.* (quoting *Hubbard*, 378 F.3d at 340).

For a district court to consider the merits of a procedurally defaulted claim based on a petitioner's claim of actual innocence, the Supreme Court and Third Circuit have addressed in detail the issue of whether a petitioner has presented "new reliable evidence":

> "[A] substantial claim that constitutional

---

that "[t]he Supreme Court has not yet recognized the existence of a freestanding claim of actual innocence." *Id.* (citing *McQuiggin*, 133 S. Ct. at 1931).

> error has caused the conviction of an
> innocent person is extremely rare. To be
> credible, such a claim requires a petitioner
> to support his allegations of constitutional
> error with new reliable evidence-whether it
> be exculpatory scientific evidence,
> trustworthy eyewitness accounts, or critical
> physical evidence-that was not presented at
> trial. Because such evidence is obviously
> unavailable in the vast majority of cases,
> claims of actual innocence are rarely
> successful."

*Goldblum*, 510 F.3d at 225 (quoting *Schlup*, 513 U.S. at 324).

Further, "only if a petitioner puts forth new evidence not

considered by the jury, does the court ask 'whether it is more

likely than not that no reasonable juror would have convicted him

in light of the new evidence.'" *Id.* (quoting *Hubbard*, 378 F.3d at

340). *Schlup* explained this aspect of the inquiry, emphasizing

that

> [t]he meaning of actual innocence . . . does
> not merely require a showing that a
> reasonable doubt exists in the light of the
> new evidence, but rather that no reasonable
> juror would have found the defendant guilty.
> It is not the district court's independent
> judgment as to whether reasonable doubt
> exists that the standard addresses; rather
> the standard requires the district court to
> make a probalistic determination about what
> reasonable, properly instructed jurors would
> do. Thus, a petitioner does not meet the
> threshold requirement unless he persuades the
> district court that, in light of the new
> evidence, no juror, acting reasonably, would
> have voted to find him guilty.

*Schlup*, 513 U.S. at 329.

If a petitioner can meet the "cause and prejudice" or

13

"fundamental miscarriage of justice" standard, his default will be excused and the court may review the merits of the claim presented. *Id.*

**b.    *Merits Analysis***

Exacting standards also apply to a federal court's review of the merits of claim.  A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a). If a claim presented in a habeas § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).  The Supreme Court has explained that § 2254(d)'s standard was meant to be difficult and is intended to "preserve[] authority to issue the writ in cases where there is no possibility

14

fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. . . . Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations omitted). The Court cautioned that "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

If the state court considers the merits in the alternative or in a summary fashion, the § 2254(d) deferential standard of review applies. *Rolan*, 680 F.3d at 319-21 (agreeing with sister circuits that "an alternative merits determination to a procedural bar ruling is entitled to AEDPA deference"); *Chadwick v. Janecka*, 312 F.3d 597, 605-07 (3d Cir. 2002) (AEDPA deferential standard applies when Pennsylvania Supreme Court rejected claim on the merits without explanation); *Hunterson v. Sabato*, 308 F.3d 236, 246 (3d Cir. 2002) ("summary adjudications are to be subjected to AEDPA standard of review"). "Where a lower state court opinion 'represents the state courts' last reasoned opinion [on the relevant issue],' we 'look through' the higher state court opinion and apply § 2254(d)'s standards to the 'highest reasoned opinion.'" *Blystone v. Horn*, 664 F.3d 397, 417 n.15 (3d Cir. 2011); *see also Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).

**B.    *Petitioner's Objections***

Here Petitioner has filed a document consisting of four substantive pages which contain eleven numbered paragraphs and a conclusion.  (Doc. 43 at 1-4.)   In addition to his request for a hearing (*id.* at 1, 3) which will be discussed below, many matters raised are general averments which do not constitute objections to Magistrate Judge Schwab's findings.  (*See* Doc. 43 at 1-4.) Petitioner alleges error on three bases: 1) "[t]he Magistrate Judge erred in treating ground one as only a complaint of ineffective assistance of counsel based on trial counsel's failure to present a specific defense, when, in fact the Petitioner averred that counsel did not present any defense at trial whatsoever" (Doc. 43 at 2 (Objections ¶ 4)); 2) the Magistrate Judge erred when she stated that Petitioner failed to present a claim of actual innocence (*id.* (Objections ¶ 6)); and 3) the Magistrate Judge erred in finding that Petitioner forfeited his *Brady* violation claim when she stated that he did not include the issue in his original habeas corpus filing (*id.* (Objections ¶ 7)).  These objections are presented in conclusory terms which arguably lack the specificity required by *Goney*, 749 F.2d at 7.  However, in an abundance of caution, the Court will review the claims *de novo*.  Although not framed as Magistrate Judge error, Petitioner also avers that he was denied effective assistance of counsel at his PCRA hearing because his PCRA counsel identified the wrong date when he questioned witnesses

about events (Doc. 43 at 3 (Objections ¶ 10)), and because he failed to elicit testimony from Petitioner during his examination of him during the PCRA hearing (Doc. 43 at 3 (Objections ¶ 11)). Because Magistrate Judge Schwab concluded that it was the failure of PCRA counsel to pursue claims on collateral appeal that led to the procedural default (Doc. 40 at 35), the Court will consider the issue as a claim of Magistrate Judge error.

1.  **Ground One**

As set out above, Petitioner states that Magistrate Judge Schwab erred in her consideration of ground one based on ineffective assistance of counsel in that he was making a claim that trial counsel did not present any defense where the Magistrate Judge considered it a claim that trial counsel failed to present a specific defense. (Doc. 43 at 1-2.)

In his Petition, Petitioner identifies Ground One as follows:

> Weather [sic] petitioner received ineffective assistance of counsel from trial counsel and appeal counsel by there [sic] failure to investigate, present, preserve issues, and evidence including affirmative forensic psychiatric expert testimony, defence [sic], and available impeachment witness-testimony, in violation of petitioner [sic] constitutional rights guarded by the 5th, 6th, and 14th amendments of U.S. Constitution and corresponding articles and sections of the Pennsylvania Constitution.

(Doc. 1 at 5; *see also* Doc. 8 at 4.) In the brief in support of his petition, Petitioner asserts

> [m]y lawyer did not contact or in any way try

17

> to find Mr. Joseph Ferguson as a witness.
> His testimony is relevant since he would
> state that he was the person who slipped
> L.S.D. into my drink on the night of the
> incident.  This witness was known to the
> Commonwealth and all my Attorneys.  My Lawyer
> was supplied with a Witness Affidavit from
> the Commonwealth which establishes an
> Affirmative Defense.  Yet, [sic] was not
> pursued on or investigated by my Attorney or
> Court Appointed Private Investigator.
> Moreover, my Lawyer was aware of another
> exculpatory witness and corraborating [sic]
> witness Lori Tini of which neither my Lawyer
> or Private Investigator interviewed,
> contacted, or called to trial to support an
> affirmative defense of Involuntary
> Intoxication.  Furthermore, Dr. Ronald J.
> Refice who authored a letter confirming that
> Involuntary L.S.D. Intoxication could explain
> the events of that night as outside of
> Defendant's control.  Appeal Counsel did fail
> to plead, present, or prove any of the above,
> and is therefore ineffective.

(Doc. 8 at 5.)

This review of Petitioner's initial filing and his explanation of the bases for Ground One which he provides in his supporting brief shows that Petitioner *did not* allege that trial counsel "did not present any defense at trial whatsoever."  (Doc. 43 at 2.) Thus, his claim that the ALJ erred in not construing Ground One of his Petition as presenting a claim that trial counsel presented no defense is without merit.[4]

The Court further finds no plain error in Magistrate Judge

---

[4]  The PCRA court set out the standards for ineffective assistance of counsel based on criticism of trial counsel's chosen strategy and failure to call certain witnesses.  (*See* Doc. 11-1 at 170-71, 179-80.)

Schwab's determination that certain aspects of the claims raised in Ground One are procedurally defaulted and otherwise the claim for ineffective assistance of counsel fails on the merits.  (See Doc. 40 at 15-23.)

## 2.   **Claim of Actual Innocence**

Petitioner asserts that he "presented a claim of actual innocence" and "[w]hen Magistrate Judge stated that the Petitioner failed to present this issue, she erred in her opinion."  (Doc. 43 at 2.)

A petitioner who claims he was "actually innocent" because he was involuntarily intoxicated when he committed the crime must present specific evidence rather than general claims of involuntary intoxication.  *In re Minarik*, 166 F.3d 591, 609 (3d Cir. 1999).  *In re Minarik* assumed that involuntary intoxication of a degree that would have deprived the petitioner of the ability to form the requisite intent, or control his actions, would constitute a complete defense or reduce what would otherwise be first degree murder to some lesser included offense and further assumed that "actual innocence" of the crime charged would include the situation where new evidence would show the petitioner not guilty of first degree murder, though guilty of some lesser offense.  *Id.* at 607 (noting lack of Pennsylvania authority on involuntary intoxication and citing ALI Model Penal Code § 2.08(1) and (4)).  Before and after deciding *In re Minarik*, the Third Circuit Court of Appeals

19

assumed without deciding that the actual innocence test applies where there is evidence that the defendant committed the crime but argues that he was responsible for a lesser degree of guilt based on diminished capacity. *Sweger v. Chesney*, 294 F.3d 506, 522 n.1 (3d Cir. 2002); *Cristin v. Brennan*, 281 F.3d 404, 421-22 & n.17 (3d Cir. 2002); *Glass v. Vaughn*, 65 F.3d 13, 16 (3d Cir. 1995).

Here Petitioner avers that the

> facts presented in the PCRA hearing were provided by several witnesses who testified that the petitioner was involuntarily drugged with LSD on April 4, 2003. These witnesses testified that the drug was placed in his drink prior to his committing the crimes for which he was charged. As such, the Petitioner presented a claim of actual innocence, as he was subjected to involuntary intoxication which prevented him from forming the required intent to commit the crimes alleged.[5]

(Doc. 43 at 2.)

Petitioner does not provide a citation to the Report and Recommendation. However, the Court assumes he is referring to Magistrate Judge Schwab's notation that Petitioner had "not argued, much less demonstrated, that a miscarriage of justice would result from the Court's failure to consider his procedurally defaulted claims," (Doc. 40 at 35.)   This statement follows her conclusion that Petitioner had not shown "cause" for his procedurally

_____

[5] Testimony of the PCRA witnesses referenced with this objection was reviewed by the PCRA Court as was the involuntary intoxication defense. (*See* Doc. 11-1 at 170-76.)  PCRA Judge Vito Geroulo did not find associated error. (*Id.* at 175-76.)

defaulted claims. (*Id.*) On the basis that Petitioner had not satisfied his burden of showing that procedural default should be excused under either method available, the Magistrate Judge concluded the procedurally defaulted claims should be dismissed. (*Id.* at 35-36.)

Petitioner's claimed error does not impact the Magistrate Judge's conclusion regarding procedural default. He does not assert that she erred in the determination that the ineffective assistance of counsel claim was procedurally defaulted but rather that the default should be excused because he claimed actual innocence. (*See* Doc. 43 at 2.)

Petitioner's statement that he "presented a claim of actual innocence" is not supported by the assertions quoted above, his habeas filing (Doc. 1), or the documents submitted in support of it (Docs. 8, 38). First, Petitioner's articulation of error in his Objections is merely a recitation of alleged facts followed by the conclusion that he was "subjected to involuntary intoxication which prevented him from forming the requisite intent to commit the crimes alleged." (*Id.*) Such conclusions do not alone satisfy the exacting standards set out above. Petitioner has not attempted to show that the evidence presented for the first time at the PCRA hearing supports a claim of actual innocence: he has not shown that the evidence is *reliable* and he has not shown that it is evidence of innocence, i.e., that the evidence presented would make "it more

likely than not that no reasonable juror would have convicted him in light of the new evidence." *See Hubbard*, 378 F.3d at 340.

Second, the Court finds no fundamental miscarriage of justice/actual innocence claim in the Petition itself. (*See* Doc. 1.) In the Petition, Petitioner mentions "involuntary intoxication evidence" only once and that is in Ground Two where he claims prosecutorial misconduct based on the withholding of several categories of evidence, including "involuntary intoxication evidence." (Doc. 1 at 6.)

Third, Petitioner's related filings are similarly deficient. In the section of Petitioner's Memorandum in Support of Habeas Corpus addressing Ground One (Petitioner's claim of ineffective assistance of trial and appeal counsel), Petitioner states that a court may consider the merits of a procedurally defaulted claim where the petitioner establishes "'cause' to excuse the default and actual 'prejudice' as a result of the alleged violation of federal law." (Doc. 8 at 5 (citing *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002)). Following this statement of the law, Petitioner sets out the legal standard for ineffective assistance of counsel claims and then cites the deficiencies attributed to trial and appellate counsel: counsel's handling of two allegedly exculpatory witnesses (Joseph Ferguson and Lori Tini) and evidence in the form of a letter from Dr. Ronald Refice. (Doc. 8 at 5.) Petitioner makes no attempt to correlate fact and relevant law and,

22

importantly, he does not cite fundamental miscarriage of justice/actual innocence standards as relevant law.

In the section of Petitioner's Memorandum in Support of Habeas Corpus addressing Ground Two, Petitioner points to the Commonwealth's failure to provide a list of documents, including reports and statements "which are exculpatory and impeaching in that they support and tend to confirm Defendant's affirmative defense of Involuntary L.S.D. intoxication" as well as statements and debriefing notes from the Airmen to their superior officers "describing Defendant in such a way as would support and confirm Defendant's affirmative defense of Involuntary L.S.D. Intoxication." (Doc. 8 at 6.) Such conclusory statements cannot be seen to raise a fundamental miscarriage of justice claim given the stringent requirements set by the Supreme Court and Third Circuit Court of Appeals as reviewed above.

In the section of Petitioner's Memorandum in Support of Habeas Corpus addressing Ground Four which is based on ineffective assistance of trial and appellate counsel and governmental obstruction, Petitioner cites *Coleman* for the proposition that default will be excused if the petitioner can demonstrate that a failure to consider his claims will result in a fundamental miscarriage of justice. (Doc. 8 at 8 (citing *Coleman*, 501 U.S. at 750).) Merely stating potentially relevant law is not stating a claim of actual innocence. A petitioner is charged with developing

his claim and demonstrating that he is entitled to relief on the basis alleged, *see*, *e.g.*, *Keller*, 251 F.3d at 415-16  and Petitioner has not done so here.

In his Supplemental Memorandum of Law (Doc. 38), Petitioner again sets out the *Coleman* standard which provides that a district court may reach the merits of a procedurally defaulted claim if the petitioner can show "cause and prejudice" or that a "fundamental miscarriage of justice" will result if the court does not consider the merits.  (Doc. 38 at 2 (citing *Coleman*, 501 U.S. at 749.) Petitioner does not otherwise mention "fundamental miscarriage of justice" or "actual innocence" in his brief.

For a district court to consider the merits of a procedurally defaulted claim, the Supreme Court and Third Circuit precedent set out above requires much more than Petitioner has provided here. Taking the broadest, most generous view of Petitioner's assertions, he does not present an actual innocence claim in any cohesive context and he does not show that evidence referenced is *reliable* evidence supporting actual evidence.  *Schlup*, 513 U.S. at 324.  Nor has Petitioner made any attempt to "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty."  *Schlup*, 513 U.S. at 329. Therefore, the Court concludes his claimed error is without merit.

**3.**   ***Brady* Violation**

Petitioner alleges that Magistrate Judge Schwab erred in

finding that he forfeited his *Brady* violation claim when she stated that he did not include this issue in his original habeas corpus filing. (Doc. 43 at 2 (citing Doc. 40 at 25).)

The statement referenced is found in Magistrate Judge Schwab's discussion of Ground Two where she considered whether Petitioner had raised the same ground for relief in state courts. (Doc. 25 at 23-26.)

> Even though Ludovici's second ground for relief explicitly references "prosecutorial misconduct," it appears that Ludovici is actually raising a *Brady* claim.[6] And, a complete review of the state court proceedings confirms that on direct appeal Ludovici exhausted a *Brady* claim, but only as it relates to the alleged error of the trail court in not granting his request that the Commonwealth disclose the psychiatric reports and opinions of Dr. Timothy Michals, the Commonwealth's medical expert. *See*, *e.g.*, Doc. 11-1 at 16-20 (raising the *Brady* claim on direct appeal to the Pennsylvania Superior Court; *see id.* at 46-51 (raising this *Brady* claim once agaIin on appeal to the Pennsylvania Supreme Court). Ludovici, however, has not included this exhausted *Brady* claim in the instant Petition.[7] Instead, he raises what appear to be new and

---

[6] Magistrate Judge Schwab provided a footnote to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). (Doc. 40 at 24 n.12.)

[7] Magistrate Judge Schwab provided a footnote stating "[f]or instance, Ludovici neither expressly references Dr. Timothy Michals, nor sets forth sufficient facts that would lead us to conclude that he is implicitly referencing Dr. Michals." (Doc. 40 at 25.)

different *Brady* claims, none of which have
been fairly presented to the state courts.
Because "a general claim that the prosecutor
has suppressed exculpatory information cannot
satisfy the exhaustion requirement as to all
subsequent *Brady* claims that a habeas
petitioner may bring," *Landano v. Rafferty*,
897 F.2d 661, 669 (3d Cir. 1990), we conclude
that Ludovici has not exhausted the new *Brady*
claims he now raises in ground two of his
Petition. *See id.* at 669-70 ("[The United
States Court of Appeals of the Third Circuit]
has consistently held that in complying with
the exhaustion requirement a habeas
petitioner must not only provide the state
courts with his legal theory as to why his
constitutional rights have been violated, but
also the factual predicate on which that
legal theory rests. This requirement is
especially appropriate in the context of an
alleged *Brady* violation since the materiality
of the suppressed information is determined
by considering the strength of the state's
case as a whole." (citing United States v.
Agurs, 427 U.S. 97, 112-13 (1976))).

(Doc. 40 at 24-25.)

Petitioner attempts to refute Magistrate Judge Schwab's
finding with the assertions that Ground One "clearly pertains to
Doctor Tim Michaels report[,] [t]his report and the Brady claim are
one and the same[,] . . . [and Ground Two] clearly established only
one reference pertaining to Doctor Michaels report." (Doc. 43 at
2.) The attempt is unsuccessful in that Ground One never mentions
Dr. Michals or specifically references an expert report (only Dr.
Refice's letter is mentioned in Plaintiff's brief and this evidence
appears to be more in the nature of a general opinion letter (Doc.
8 at 5)), and there is no indication that Ground One is a *Brady* or

26

prosecutorial misconduct claim.  (Doc. 1 at 6.)  Similarly, the documents filed in support of the Petition do not provide any indication that Ground One "clearly pertains to Dr. Tim Michaels report" (Doc. 43 at 2).  (*See* Doc. 8 at 4-5, Doc. 38.)

Petitioner's assertion regarding Ground Two is also unavailing in that the alleged prosecutorial misconduct lacks the specificity required in the exhaustion context.  Petitioner is mistaken that Ground Two "clearly established only one reference pertaining to Doctor Michaels report" (Doc. 43 at 2): Ground Two asserts "prosecutorial misconduct . . . by withholding material and impeachment evidence including eyewitness statements, police reports, and involuntary intoxication evidence supporting affirmative defence [sic] of Petitioner."  (Doc. 1 at 6.)  Supporting documents are similarly lacking the required specificity: in the explanation of Ground Two in his first Memorandum, Petitioner provided a list of evidence not provided by the Commonwealth set out in general terms including "requested discovery medical reports" (Doc. 8 at 6); in his Supplemental Memorandum, Petitioner does not discuss *Brady*, prosecutorial misconduct, or the specific medical report at issue (*see* Doc. 38). For all of these reasons, Petitioner's claimed error is without merit.

**4.    Ineffective Assistance of PCRA Counsel**

Petitioner's filing includes two paragraphs which do not point

to specific error in the Report and Recommendation but infer error. He states that he was denied effective assistance of counsel at his PCRA hearing because his PCRA counsel referenced the wrong date in questioning witnesses (Doc. 43 at 3 (Objections ¶ 10)), and PCRA counsel was ineffective for "failing to elicit testimony" from him during the PCRA hearing (Doc. 43 at 3 (Objections ¶ 11)).

While "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," *Martinez v. Ryan*, 566 U.S. 1, 9 (2012), a petitioner must show that initial collateral-review counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and that "the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit," *id.* at 14; *see also Norris v. Brooks*, 794 F.3d 401, 404-05 (3d Cir. 2015).[8] *Strickland* set out a two-prong test: a petitioner must demonstrate "(1) that counsel's performance was deficient, that is, fell below an objective standard of reasonableness, and (2) that counsel's

---

[8] Magistrate Judge Schwab thoroughly reviewed when attorney error can be considered "cause" for a procedural default, including the application of *Martinez* to claims of ineffective assistance of PCRA counsel raised by a Pennsylvania prisoner like Petitioner and correctly applied relevant principles to conclude that Petitioner had not shown ineffective assistance of initial-review PCRA counsel which could provide cause for procedural default. (Doc. 40 at 29-35.)

deficient performance prejudiced his client."[9]  *Albrecht v. Horn*,
485 F.3d 103, 127 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at
689-92).  To show prejudice, a petitioner must show that "there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.  A
reasonable probability is a probability sufficient to undermine
confidence in the outcome."  466 U.S. at 694.

   In support of his claim that PCRA counsel was ineffective,
Petitioner states that PCRA counsel

> questioned several witnesses concerning
> events that occurred in the year 2004.  The
> crime in question occurred on April 4, 2003.
> Any questions concerning events that occurred
> more than a year later were irrelevant.  This
> resulted in effective assistance of counsel.
> In the opinion of the PCRA Judge dated May
> 18, 2011, Page 10, Paragraph 3, Line 1, the
> Judge comments on this fact, yet he declines
> to find that counsel was ineffective.  The
> Petitioner avers that his performance was
> ineffective and he was denied his right to
> effective assistance of counsel under the 6th
> Amendment.

(Doc. 43 at 3.)  Petitioner does not attempt to show that PCRA
counsel's initial-review performance fell below an objective
standard of reasonableness and that there was a reasonable

---

   [9]  Pennsylvania's three-part test for evaluating ineffective
assistance of counsel claims announced in *Commonwealth v. Peirce*,
527 A.2d 973, 975 (1987), has been held to be the same as the
*Strickland* standard.  *See*, *e.g.*, *Perez v. Rozum*, 488 F. App'x 656,
659 n.2 (3d Cir. 2012) (not precedential) (listing cases and noting
that a Pennsylvania court has adjudicated a *Strickland* claim on the
merits when it applies the state-law standard).

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. On this basis alone Petitioner's asserted error fails. However, the Court further finds that the cited portion of the PCRA Memorandum and Order does not support a *Strickland* ineffective assistance of counsel claim in that the judge noted that a woman testified about an event "on April 4, 2004" but the court assumed that she meant 2003. (Doc. 11-1 at 173.) Thus, even if PCRA counsel misstated a date, the PCRA Court assumed the correct date and no prejudice occurred.

Similarly, Petitioner does not attempt to show that the *Strickland* factors are satisfied regarding his claim that his PCRA counsel did not elicit testimony from him when he testified at the PCRA hearing. (Doc. 43 at 3 (Objections ¶ 11).) As stated by Petitioner, he testified one day and his attorney planned to recall him the next day but "the PCRA Judge denied the Petitioner the opportunity to testify for a second time, and the information that he could have provided to the PCRA Court was never presented." (*Id.*) With his general averments, Petitioner does not demonstrate that counsel's performance was deficient nor does he demonstrate resultant prejudice. Thus, the Court concludes this claimed error is without merit.

## C.  **Other Matters**

With his objections, Petitioner reiterates his request for an

30

evidentiary hearing. (Doc. 43 at 1-3.) He bases his request on allegations that Magistrate Judge Schwab expressed some confusion regarding Petitioner's filings, she misunderstood some issues presented, and he has difficulty processing words on paper but he has the ability to orally argue matters which the Court considered unclear. (*Id.*) A thorough review of the record shows that Magistrate Judge Schwab carefully and thoroughly reviewed the parties' filings and relevant documents. She gave every possible consideration to Petitioner's claims in the Report and Recommendation under review. (*See*, *e.g.*, Doc. 40 at 24, 28-29, 34.) Though Petitioner stated in his Memorandum supporting the Petition that the court has the discretion to grant an evidentiary hearing when violations of a constitutional magnitude are presented and a hearing would be meaningful (Doc. 8 at 8 (citing *Goldblum*, 510 F.3d at 220-21)), there is no basis to conclude that a hearing would be meaningful given the Court's conclusion that Magistrate Judge Schwab has not erred on the bases alleged and otherwise finds no clear error in the Report and Recommendation. Therefore, Petitioner's request for a hearing is denied.

### III. Conclusion

For the reasons discussed above, the Court concurs with Magistrate Schwab that this Petition (Doc. 1) is properly denied. (Doc. 40 at 36.) The Court adopts the Report and Recommendation (Doc. 40) and concludes there is no basis for the issuance of a

certificate of appealability.  An appropriate Order is filed

simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: April 24, 2018